```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

   v.                                                    **CRIMINAL NO. 2:21-CR-20**
                                                                       (KLEEH)

**JASON STEVEN KOKINDA,**

       **Defendant.**

### MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [ECF NO. 70]

Pending before the Court is Defendant's motion for judgment of acquittal or a new trial. For the reasons discussed herein, the motion is **DENIED**.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On December 17, 2019, the grand jury returned a one-count indictment against Defendant, charging him with Failure to Update Sex Offender Registration, in violation of 18 U.S.C. § 2250(a). See ECF No. 1, Case No. 2:19-CR-33. On February 2, 2021, the grand jury returned a superseding indictment against Defendant, charging him with Possession of Child Pornography – Previous Conviction, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), and Failure to Update Sex Offender Registration, in violation of 18 U.S.C. § 2250(a). See ECF No. 200, Case No. 2:19-CR-33. On September 8, 2021, in this case, the grand jury returned a one-count indictment against Defendant, charging him with Failure to

**MEMORANDUM OPINION AND ORDER DENYING MOTION**
**FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [ECF NO. 70]**

Update Sex Offender Registration, in violation of 18 U.S.C. § 2250(a). See ECF No. 1, Case No. 2:21-CR-20. The Government then moved to dismiss Count Two of the Superseding Indictment in Case No. 2:19-CR-33, and the Court granted the motion. See ECF No. 286, Case No. 2:19-CR-33.[1]

On October 19, 2021, this case came on for trial. At the close of the Government's case in chief, Defendant orally moved for acquittal. See ECF No. 53. October 21, 2021, the jury returned a guilty verdict against Defendant with respect to the charge of Failure to Update Sex Offender Registration. On June 15, 2022, the Government moved to dismiss Count One of the Superseding Indictment in Case No. 2:19-CR-33, which was the only remaining count in that case. The Court granted the motion.

On November 8, 2021, Defendant filed a pro se motion for acquittal or new trial in this matter [ECF No. 70]. His counsel moved to adopt the motion, which the Court grants herein, and filed a memorandum in support [ECF Nos. 102, 103]. Defendant has filed a number of pro se supplements to the motion. Counsel also filed a motion to adopt a number of Defendant's pro se filings, which the Court grants herein [ECF No. 130]. On April 4, 2022, due to

---

[1] Case Nos. 2:21-CR-20 and 2:19-CR-33 were previously consolidated. They have since been severed, and as discussed herein, Case No. 2:19-CR-33 has been dismissed in its entirety.

**MEMORANDUM OPINION AND ORDER DENYING MOTION**
**FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [ECF NO. 70]**

the excessive number of filings from Defendant, the Court informed the parties that it would not consider any supplemental filings beyond those filed as of April 1, 2022, in ruling on the motion for judgment of acquittal. See ECF No. 128.

## II. DEFENDANT'S ARGUMENTS

In Defendant's filings, both in his pro se filings and those by counsel, he argues that the Court mis-instructed the jury as to the meaning of "resides" under the Sex Offender Registration and Notification Act ("SORNA") and that there was insufficient evidence to support a conviction.

## III. GOVERNING LAW

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

This Court's duty in instructing jurors is to provide correct statements of the law that avoid confusing or misleading them. See United States v. Savage, 885 F.3d 212, 222-23 (4th Cir. 2018) ("[T]aken as a whole, the instruction [must] fairly state[] the controlling law."); United States v. Miltier, 882 F.3d 81, 89 (4th Cir. 2018) (instructions must "adequately inform[] the jury of the controlling legal principles without misleading or confusing the

**MEMORANDUM OPINION AND ORDER DENYING MOTION**
**FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [ECF NO. 70]**

jury to the prejudice of the opposing party.").

A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). A defendant must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id. (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether 'there is substantial evidence, taking the view most favorable to the Government, to support it.'" Beidler, 110 F.3d at 1067.

The court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). It is the jury, and not the court, who "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067. Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

**MEMORANDUM OPINION AND ORDER DENYING MOTION
FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [ECF NO. 70]**

### IV. INSTRUCTIONS PROVIDED TO JURY

The Court instructed the jury of the following law under SORNA:

> Title 18, United States Code, Sections 2250(a) provides, in pertinent part, that:
>
> Whoever –
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2) travels in interstate . . . commerce; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be guilty of a crime.

See ECF No. 65 at 12. The Court instructed the jury as to the elements as follows:

> In order to establish the offense charged in the Indictment, the Government must prove each of the following elements beyond a reasonable doubt:
>
> First: That the defendant was required to register and update his registration as a sex offender under the Sex Offender Registration and Notification Act;
>
> Second: That the defendant thereafter traveled in interstate commerce; and
>
> Third: That defendant knowingly failed to register as a sex offender in West Virginia.

See id. at 12-13. The Court instructed the Jury as to the meaning of "resides" as follows:

5

> This element is satisfied by evidence that the defendant came to reside in West Virginia. With respect to this element, the place where a person "resides" is the location of an individual's home or other place where the individual habitually lives. "Habitually lives" includes places in which the sex offender lives with some regularity. "Habitually lives" accordingly should be understood to include where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons. The specific interpretation of this element of "residence" is that a sex offender habitually lives in the relevant sense in any place in which the sex offender lives for at least 30 days. Hence, a sex offender resides in a jurisdiction for the purposes of SORNA if the sex offender has a home in the jurisdiction, or if the sex offender lives in the jurisdiction for at least 30 days. As to the timing of registration based on changes of residence, the understanding of "habitually lives" to mean living in a place for at least 30 days does not mean that the registration of a sex offender who enters a jurisdiction to reside may be delayed until after he has lived in the jurisdiction for 30 days. Rather, a sex offender who enters a jurisdiction in order to make his home or habitually live in the jurisdiction is required to register within three business days.

Id. at 15. Finally, the jury was also provided the following instruction:

> A sex offender who lacks a fixed abode or permanent residence is still required to register in the jurisdiction in which they reside. Such a sex offender cannot provide the residence address required because they have no definite "address" at which they live. Even

> a transient or homeless sex offender is still required to provide a description of the place they habitually live. Some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives, including where the sex offender might station himself during the day or sleep at night.

Id. at 16.

## V. DISCUSSION

In order to convict Defendant under 18 U.S.C. § 2250(a), the Government was required to prove (1) that Defendant was a sex offender required to register under SORNA; (2) that he traveled in interstate commerce; and (3) that he knowingly failed to register or update his registration. See United States v. Helton, 944 F.3d 198, 202 (4th Cir. 2019); 18 U.S.C. §2250(a) ("[W]hoever . . . is required to register under [SORNA], travels in interstate commerce . . . and knowingly fails to register or update a registration as required by [SORNA], shall be fined . . . or imprisoned not more than 10 years, or both.").

Because there was no dispute that Defendant traveled in interstate commerce and that he failed to register in the State of West Virginia, the dispute at trial and now centers around the first element: whether Defendant was required to register in West Virginia under SORNA. A person with a qualifying sex offense is required under SORNA to register in any jurisdiction in which he

resides, is employed, or is a student. See 34 U.S.C. §§ 20911, 20913. Because Defendant stipulated to the qualifying sex offense, the only issue that remained in dispute during trial and remains in dispute now is whether he "resided" in West Virginia during the time period alleged in the Indictment, thus triggering his obligation to register as a sex offender.

In short, Defendant asserts that the Court unlawfully expanded the definition of "resides," and the Court disagrees.

**A.  The Court's jury instruction on "resides" and "habitually lives" was a correct statement of the law that did not confuse or mislead the jury.**

Under SORNA, where an individual "resides" is defined as "the location of the individual's home or other place where the individual habitually lives." 34 U.S.C. § 20911(13). SORNA does not further define "resides" or "habitually lives." Congress, however, expressly delegated to the Attorney General the authority and responsibility for issuing guidelines and regulations to implement SORNA. See 34 U.S.C. § 20912(b) ("The Attorney General shall issue guidelines and regulations to interpret and implement this title.").

Pursuant to its authority delegated by Congress, the Attorney General promulgated the National Guidelines for Sex Offender Registration and Notification (the "Guidelines"). See 73 Fed. Reg. 38030 (July 2, 2008). The Fourth Circuit has held, and

continues to recognize, that the Guidelines have the force and effect of law. See United States v. Gould, 568 F.3d 459, 465 (4th Cir. 2009) ("[T]he National Guidelines . . . have the force of law. . . .")[2]; United States v. Bridges, 741 F.3d 464, 468 (4th Cir. 2014) ("The[] Guidelines 'can and do have the force and effect of law.'"); United States v. Helton, 944 F.3d 198, 204 (4th Cir. 2019) ("As we have stated, these Guidelines can and do have the force and effect of law.") (quotation marks omitted).

Under the Guidelines, offenders who may be transient or homeless are still required to register as sex offenders under SORNA:

> Sex offenders who lack fixed abodes are nevertheless required to register in the jurisdictions in which they reside . . . . [A] sex offender must register . . . [i]n any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere).

73 Fed. Reg. at 38055, 38061. The Guidelines also explain the meaning of "habitually lives":

> "Habitually lives" accordingly should be understood to include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested

---

[2] In Defendant's supplemental brief docketed at ECF No. 98, he concedes that the Guidelines have the "force of law" are entitled to "Chevron deference."

reasons.

<u>Id.</u> at 38062. More specifically, the Guidelines explain the meaning of "habitually lives" in the context of transient offenders:

> Such sex offenders cannot provide the residence address [as required by 34 U.S.C. § 20914(a)(3)] because they have no definite "address" at which they live. Nevertheless, some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives — e.g., information about a certain part of a city that is the sex offender's habitual locale, a park or spot on the street (or a number of such places) where the sex offender stations himself during the day or sleeps at night, shelters among which the sex offender circulates, or places in public buildings, restaurants, libraries, or other establishments that the sex offender frequents. Having this type of location information serves the same public safety purposes as knowing the whereabouts of sex offenders with definite residence addresses. Hence, the authority under [34 U.S.C. § 20914(a)(7)] is exercised to require that information be obtained about where sex offenders who lack fixed abodes habitually live with whatever definiteness is possible under the circumstances. Likewise, in relation to sex offenders who lack a residence address for any other reason — e.g., a sex offender who lives in a house in a rural or tribal area that has no street address — the registry must include information that identifies where the individual has his or her home or habitually lives.
>
> . . .
>
> [A] sex offender may be homeless, living on

> the street or moving from shelter to shelter, or a sex offender may live in something that itself moves from place to place, such as a mobile home, trailer, or houseboat. SORNA . . . accordingly defines "resides" to mean "the location of the individual's home or other place where the individual habitually lives."

Id. at 38055-56, 38061.

**B.   There was sufficient evidence supporting the jury's finding that Defendant habitually lived in the Elkins area during the time period charged in the Indictment.**

As the Government correctly points out, the jury was presented with sufficient evidence to find that Defendant "habitually lived" in the Elkins, West Virginia, area from August 24, 2019, until his arrest on September 29, 2019. Defendant was regularly seen in the city park, in the library, and at the YMCA. Defendant had reserved two campgrounds close to Elkins. His financial records showed that he regularly shopped at businesses in Elkins, to the exclusion of almost any other location. Financial records further demonstrated that when Defendant left the state or the area, he always returned to Elkins.

In addition to this evidence, the jury heard that Defendant regularly concealed his identity. He used different names, addresses, and telephone numbers when interacting with many of the establishments in the Elkins area, including Enterprise, Corridor H, Yokum's, the YMCA, Anytime Fitness, and the Elkins Police.

**MEMORANDUM OPINION AND ORDER DENYING MOTION
FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [ECF NO. 70]**

Defendant did not dispute this evidence.

Further, as the Government points out, Defendant's stated intent to reset his residence every time he left the county or the state line did not convert his "habitual living" in Elkins to merely "passing through." The Guidelines recognize, and the jury was correctly instructed, that residence is not "just in terms of what [the offender] would choose to characterize as his home address or place of residence for self-interested reasons." 73 Fed. Reg. at 38062. The Government presented sufficient evidence supporting the jury's finding that Defendant habitually lived in the Elkins area during the time period charged in the Indictment.

## VI.   CONCLUSION

For the reasons discussed above, the Court finds that its jury instructions fairly stated the controlling law and did not confuse or mislead the jury. Defendant has not met his burden. His counsel's motions to adopt [ECF Nos. 102, 130] are **GRANTED,** and the motion for acquittal or new trial is **DENIED** [ECF No. 70].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: October 5, 2022

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA